The argument next in ExpertConnect, the Parmar 18-2261 Mr. Roth May it please the Court, Richard Roth on behalf of Defendant Appellants. Your Honors, we are here today on an appeal from a decision that Judge Schofield rendered in connection with a preliminary injunction, which we believe went far overboard. To have given a preliminary injunction to a trade secret case, the Court must first find that there were trade secrets taken and that the trade secrets were disseminated. There is absolutely no evidence whatsoever on the record that the trade secrets are disseminated. There is a case, this Court ruled, called Faveli, ten years ago. Yes, but haven't you, didn't the District Court originally say that there was a violation of contract? And though its statement about the violation of contract was over strong because it treated the violation of contract where the contract said there is irreparable harm as being determinative of that, which on our case law is not. It is suggestive, but not. Then when it went back on reconsideration, it both came with the second issue, the issue of trade secrets and goodwill, but also repeated that there was enough on the contract and it did say it, and that, in your brief, you have never challenged. So that I'm not sure that we need to get to whether any of the second part was sufficiently stated because the District Court restated its basis. It said, I'm also going on another one, but it did restate its basis, and I don't see any challenge of that in your brief. Your Honor, Judge Calabresi, with all due respect, when the reconsideration decision came on, it was devoid of any contract language. The decision upon which this is based I'm sorry, I have read it, and it does have some contract language in it. It ain't much. Your Honor, with all due respect, it's on page 90 and 91, the whereas provisions do not mention anything about the contract. They only mention about the trade secret, and the fact the court goes on. Are you referring to the order? Are you referring to what the judge decided? Because you leave a lot out in your brief about what she relied on. I mean, if I were to just read your brief, I would think that the judge just heard a few witnesses and then sort of cavalierly made this decision, but the record doesn't show that. That's exactly what happened, Your Honor. It's not, because she heard from witnesses on a day, a witness on a day previous to the date that she made the decision. She had all of the information that was submitted under seal. She had written submissions, and she had the testimony. This is not a situation in which a judge just carelessly decided that she would grant this injunction, which is, I have to say, what your brief leads me. If I had only read that, that's what I would have thought. Your Honor, with all due respect, she did not hear witnesses on two different days. The appellee claims there was a hearing on June 8th. It was not a hearing. Didn't a man come in and answer questions? He was asked a question. It wasn't under oath, and it wouldn't, but the point is, when it came time to the hearing, he did not testify. Mr. Boyles never came to the stand to testify, and what's important here is that the court, when it rendered its reconsideration decision, it did not state anywhere on it that it was relying on a contract, and what's important under the Favoli decision and under, as the court properly recognized under the contract decision, under Favoli, there must be a dissemination. In the contract, there must be more than a contract, and the court didn't find more than a contract in her reconsideration decision. She left it out, and what's worse about this decision, Your Honor, is that this is a confidentiality agreement. What she did, she went way beyond confidentiality. She turned it into a non-solicitation. She rendered a decision which said that if, in fact, a customer contacts our client, they have to then contact the appellee. This is far different than a typical confidentiality decision, and in Favoli and in every court, what's paramount is that any injunction must be narrowly tailored. We all know that. That's a different question. The question of whether this injunction ultimately is narrow enough or whether you have a right to go back to a district court and say, specify more clearly what I can do or not, is a different question from the question of whether an injunction on these facts and on the things you have not traversed can stand. Let's try to keep those arguments separate. I will, Your Honor. I will, Your Honor, but on that issue, the only evidence . . . there's no evidence whatsoever of dissemination, so the Favoli did meet the standards, and on the contract . . . The question, though, is these defendants signed multiple confidentiality agreements, and there's some pretty powerful evidence that on the day they left the company, they took a lot of things that they shouldn't have taken in contravention of those multiple arguments, and what the judge was trying to do at this very early stage of the litigation was to put a stop on everything in that situation, and the evidence that she had, as far as I can recall, is that there were client lists, billing records, records involving health and how they had matched experts to particular witnesses, and I think the judge had all that evidence and was trying to keep the litigation in a place where the plaintiff couldn't be irreparably harmed, and I don't know what else she wanted her to do. Well, first of all, under Rule 65D, she failed to identify what the trade secrets were. The order must say what the trade secrets are. There's plenty of law on that, so we don't know. The problem is not necessarily what the judge was supposed to do, but... Again, you're conflating two different things. The question of whether there was enough here so that the district court could find that a determination of money damages would be extraordinarily difficult given the use of these secrets and the possible harm to the goodwill, so that that would be irreparable damage is one question, and if that is so, a preliminary injunction can issue. Your Honor... A question of whether the preliminary injunction then was sufficiently specific or whether you have a complaint about that is a separate issue. You keep conflating them. In response to your question, there's an affidavit, a declaration that was submitted that actually listed the amount of monetary loss that would be sustained by the appellee, the plaintiff in this case. For one month, right? For one month? Per month. He didn't say per month. $65,000 per month. The burden of restraining a defendant is very high, and when a plaintiff comes to court and says, we will be losing $65,000 per month, and we believe it's been transferred elsewhere, and I think in response to your direct question, you're right. Some stuff was taken, but for that stuff to equate to trade secret... Do you read that as $65,000 a month or at least $65,000 a month? How do you read that? I can give you the exact quote. It's in the declaration. No, I know. I can read the exact quote. You can read it. He quantifies it, Your Honor. Thank you. Thank you very much. Mr. Davis. May I please to court? My name is Daryl Davis. I'm on behalf of Expert Connect. I'll start with two points. The defendant stole trade secrets and other confidential business information from Expert Connect. Was there any evidence in the record before the district court of dissemination of trade secrets and other confidential business information was disclosed? Mr. Brewer's testimony was the sole basis for making that allegation at that time. That has been borne out by discovery, which is not before the court. That was a question that I had. This has been quite some time since Judge Schofield issued this injunction, and you've had discovery in front of the magistrate judge. Has the landscape changed at all? We have had some discovery, but there has been pushback on the side of defendants to actually produce, particularly the electronic devices that the judge ordered they should. We still have not received the hard drive that was referenced. We have not had an opportunity to look at their laptops or their Google Drive. There's been pushback on their part to actually give us access to it. How much discovery is left? That? We have to do a forensic examination. What about depositions? Have you done depositions? We've only had one deposition of Eric Burles as well. In addition to that, in our initial disclosures . . . this is going beyond it, but in our initial disclosures, we identified, I believe, five clients that we knew for certain because the expert had conversations with them that the defendants had actually solicited them and took business away from us. How do you know they took it from the information that they . . . The forensic . . . The evidence suggests that they took, as opposed to some other way? How do you know that they didn't get it from just doing research? It's not publicly available. All the stuff is password protected on Expert Connect's database. The name of the client? The name of the clients are not, but it's more than just the name of the client themselves. It's the information and the history of the client's uses. I think you pointed out right there. It's the experts, what experts they use, who at that particular client will use an expert for what. There are also client and expert surveys where they can actually . . . It's an entire database of information that's not publicly available. It is, absolutely. An expert collects . . . their client names are not publicly available either. There's confidentiality clauses because they do work with publicly traded companies as well. To some extent, the disclosure of the client names are not permitted. You said that the only evidence was of the pricing methodology being disclosed was from Mr. Broyles. Is that right? The pricing methodology as well as how they determine experts and how they place those experts as well. How does that disclosure to your client irreparably harm the value of the pricing methodology? They basically disclose to our clients as to how expert priced their contracts in their efforts to essentially undercut the amount that Expert Connect charged. Expert Connect has actually lost clients based on that fact. Do you claim that the district court having decided perhaps incorrectly on the contract theory where there was a contract that there would be irreparable damage, when it went to reconsideration, abandoned that theory and went to another one or maintained that theory but then added another one? I think the district court maintained that theory and added another one. Similar to the . . . What report do you give me for that? The district court pointed out, I guess at length, her reasons for, I guess, relying on the breach of contract claim at the hearing. On the record there, she basically went through each . . . she essentially described each contract that was breached and how it was breached. Based on that, she came to conclusions that they were irreparably harmed. She expanded that theory more in addressing the misappropriation of trade secrets and the motion for reconsideration. Most recently, the defendants filed a motion to modify the injunction while this appeal is pending. She clarified the injunction further at that point. What is missing is, and I think Judge, you described it, that there were multiple hearings. The court itself did describe the June 8th proceeding as a hearing where Mr. Bross had an opportunity, though he was not under oath, to answer the judge's questions. In addition to that, there were multiple submissions. We submitted for in-camera review under seal to the court, examples of the trade secrets, the actual trade secrets that the defendants misappropriated. We also had the forensic examination that essentially showed what documents that the defendants had stolen as well. The additional evidence is such that in the discovery responses, since we were talking about that, the defendants had admitted that they did contact the clients, that we alleged that they did, and they did take away business from Expert Connect. Mr. Broyles also talked about goodwill. Is that correct? Absolutely. What evidence in the record can you point to that Expert Connect's goodwill would have been irreparably harmed absent this injunction? Sure. They have destroyed some of the client relationships that Expert Connect has developed. These were longstanding relationships, clients that Expert has had since the company was founded more than seven years ago. Why? By saying things like they overcharged you, they cheated you, that kind of thing? They overcharged you, they cheated you, and made other misrepresentations about Expert Connect. In addition to that, more recently, in an effort to modify . . . I'm sorry to interrupt you. How do you know that? You said that they've undermined Expert Connect. They said they're cheaters. You said something else. Is that something that's come out in discovery, or how do we know that? Two things. One, it came out from communications that clients have had with Expert Connect. Two, there was an actual affidavit that was submitted by a former client, as support by the defendants for their motion to modify. The court actually found that that communication with the client actually violated the injunction order. She's given us permission to go forward with sanctions for that. But in that affidavit, it contains false statements that were attributed to Expert Connect that were basically stated by the defendants in their counsel. What should we do about the fact that the actual injunction has no time limit, but when one of the parties' confidentiality was for two years, the other one is not, and the fact that there is no specificity as to what the trade secrets . . . How should we handle that? I think to deal with the specificity with respect to trade secrets, it's clear. The injunction only applies to the twenty-one listed clients on that particular list, and it involves the trade secrets that they took for those particular clients. There's a list of documents that were misappropriated, and those have been identified to the court. But would you acknowledge that the failure to list in the order itself the specific trade secrets or confidential information violated Rule 65D? I do not, Your Honor. I think the record taken as a whole, that the information in terms of what trade secrets were actually violated is included there. When you say the record taken as a whole, isn't the purpose of 65D to provide a clear . . . Yes, Your Honor. . . . roadmap for everybody? When I say record taken as a whole, I would state that the forensic report included spreadsheets that included the documents that were actually . . . I think the question is, what would be the problem with just asking the district judge to be specific in the order, not reversing it, just sending it back, taking into account those things that you said have happened since she issued the injunction? We had no objections to the court modifying the order to make it more specific, and we would not have an objection to the court modifying the order in terms of listing what the actual trade secrets are. Thank you. Thank you very much. Okay. Very briefly, Your Honor, I want to focus on the question of contract because I think that's something that disturbs the court. If you look at the order, the reconsideration decision, the court in a paragraph discusses on page 88, A88, discusses the irreparable injury and what is favely and goodwill. There's no reference whatsoever once everything was reconsidered to the contract. I'm not going to read it, but it's a long paragraph. The court says there's irreparable injury because of favely. There's no question there's no evidence of a dissemination here and because of goodwill. In answer to your question about the $65,000, the actual quote is $65,000 a month, not or more. It says they actually have a quantifiable amount of damages or suffering and to grant an injunction, which in this case went way beyond it because it actually says you can't solicit and you can't compete when there's not even a non-solicitation agreement, goes far beyond what, in fact, this court was able to do. It's not a non-solicitation agreement, but there are a bunch of agreements that say, please don't steal our stuff. Well, then, Your Honor, then . . . So I don't . . . I'm not sure what the difference is. Oh, there's a huge difference. You can't use the trade secret is very different from you can't contact a customer. I mean, there are agreements that are non-solicitation. That's not what this is. There's a monumental difference. But in the real world, if you've stolen all of the trade secrets and then you contact the customer, are you going to separate out in your mind what you know from the things that you stole versus just cold calling out of the phone book? You're not, but that's where the $65,000 a month damages come in. The standard for an injunction for trade secrets is extremely high. I read that. And you probably know that before you read that, but the point is that take the hearing, take even the conversation, and take the declaration. They're nowhere near that. And on the goodwill, the entirety of the evidence before this court on goodwill is one sentence. It is my belief that Expert Connect's reputation and brand will be damaged. That's it. That's just not enough under the Thank you, Your Honors. Thank you. We'll reserve the decision.